UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCISCO ANTONIO PALIN-ROSARIO,

                              Petitioner,

                  -v-

MARKWAYNE MULLIN *et al.*,

                              Respondents.

---

26 Civ. 3608 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

On April 30, 2026, Francisco Antonio Palin-Rosario, a noncitizen from the Dominican Republic subject to an order of removal, was arrested by Immigration and Customs Enforcement ("ICE") at the Thurgood Marshall United States Courthouse after being sentenced to time served on a conviction for illegally re-entry in violation of 8 U.S.C. §§ 1326(a), (b)(2). Dkt. 1 ("Pet."); 21 Cr. 751 (S.D.N.Y.), Dkt. 55 ("Judgment of Conviction"). He now petitions, *pro se*, for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pet. at 1–2. His bases for challenging his detention are that ICE violated Palin-Rosario's due process rights by failing to provide him a pre-detention reasonable fear interview and by denying him adequate medical care during detention. *Id.* at 3–5. Respondents ("ICE") defend his detention in anticipation of imminent deportation as lawful.

For the reasons that follow, the Court dismisses the petition.

1

## I.    Background[1]

### A.    Arrival to the United States

In the 1970s, Palin-Rosario entered the United States from the Dominican Republic. Pet., Ex. D ("PSR") ¶¶ 60, 4.  Between 1974 and 1977, he attended high school in Astoria, New York, and worked at a car wash.  *Id.* ¶ 60.  He states that, when he was in approximately 11th grade, his father found marijuana cigarettes that Palin-Rosario had been given to hold by someone at the car wash.  *Id.*  Believing these cigarettes to belong to Palin-Rosario, his father sent him, as punishment, to the Dominican Republic.  *Id.*

In 1976, Palin-Rosario re-entered the United States.  *Id.* ¶ 4.  By 1979, he earned a high school equivalency diploma and then enlisted in the U.S. Marine Corps.  *Id.* ¶ 59.  Between July 29 and November 17, 1980, he served in the Marine Corps.  Pet. ¶¶ 34–35.  On April 29, 1991, he applied for U.S. citizenship, but his application was denied for lack of proper documentation.  PSR ¶ 4.  In the mid-1990s, he worked as a freelance photographer and in beauty salons, grocery stores, and other retail outlets.  *Id.* ¶ 70.

### B.    Federal Narcotics Conviction and Deportation (1995–2001)

In early June 1995, Palin-Rosario conspired to distribute 219.1 grams of crack cocaine. *Id.* ¶ 28. After flying from New York City to Atlanta, he was apprehended with crack cocaine by a Georgia Drug Enforcement Administration taskforce.  *Id.*  He admitted planning to travel by bus to Chattanooga, Tennessee to deliver the drugs to a co-conspirator.  *Id.* ¶ 28; 95 Cr. 78 (E.D. Tenn).  At the direction of federal agents, Palin-Rosario completed the delivery.  PSR ¶ 28.

---

[1] This account draws on Palin-Rosario's petition and exhibits, Dkt. 1; the declarations of Leonel Paulino, a deportation officer, Dkt. 16, and Thomas Flynn, a supervisory deportation officer at the Orange County Jail, Dkt. 17; and Palin-Rosario's immigration records, Dkts. 15-1 to 15-14.

2

On June 13, 1995, Palin-Rosario was charged in the Eastern District of Tennessee with conspiracy to sell, distribute, or dispense crack cocaine, in violation of 21 U.S.C. § 846. *See* 95 Cr. 78 (E.D. Tenn.), Dkt. 1. The next day, he was found ineligible for release on bond due to a detainer from Immigration and Naturalization Services ("INS"), ICE's predecessor agency. *Id.*, Dkt. 4. On August 15, 1995, he pled guilty to one count of violating § 846. *Id.*, Dkts. 14, 17. On November 13, 1995, he was sentenced principally to 78 months' imprisonment. *Id.*, Dkt. 22.

On September 30, 1998, INS served Palin-Rosario with a Notice to Appear, Form I-862, charging him as removable under Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as a noncitizen who had been convicted of an aggravated felony after admission, and under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i), as a noncitizen who, after admission, had been convicted of a controlled substance violation. Dkt. 16 ("Paulino Decl.") ¶ 7. On January 6, 1999, an immigration judge ("IJ") ordered him removed to the Dominican Republic. *Id.* ¶ 8. On July 8, 1999, the Board of Immigration Appeals ("BIA") denied Palin-Rosario's appeal of that decision, making his removal order final. *Id.* ¶ 10.

On February 8, 2001, Palin-Rosario was released from Bureau of Prisons ("BOP") custody, after completion of his prison sentence. PSR ¶ 28. On April 16, 2001, he was deported pursuant to his final removal order. *Id.*

### C.    Illegal Re-Entry and Indictment for the Same (2007–2021)

On July 17, 2007, Palin-Rosario returned to the United States without permission. *Id.* ¶ 15. Between 2007 and 2022, he used the alias "Victor Manuel Taveras Paulino." Dkt. 15-13; PSR ¶ 43.

On January 13, 2021, the National Criminal Analysis and Targeting Center referred Palin-Rosario's case to ICE. Paulino Decl. ¶ 13. On September 9, 2021, a fingerprint specialist

from the Department of Homeland Security compared: (1) a January 23, 1996 fingerprint impression for "Francisco Palin" taken by the BOP in connection with Palin-Rosario's prior conviction; (2) an April 16, 2001 fingerprint impression for "Francisco Palin" taken at the time of Palin-Rosario's 2001 deportation; and (3) a July 19, 2017 fingerprint impression for "Victor M. Taveras Paulino" taken by the New York City Police Department. PSR ¶ 10. The specialist found that all three impressions belonged to Palin-Rosario. *Id.*

On December 13, 2021, a grand jury in this District returned an indictment charging Palin-Rosario with one count of illegal re-entry, after deportation following commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). 21 Cr. 751 (S.D.N.Y.), Dkt. 1.

**D.    Arrest, Guilty Plea and Sentencing (2023–2026)**

On October 5, 2023, Palin-Rosario was arrested on the illegal reentry indictment, presented, and released on his own recognizance. *Id.*, Dkts. 4, 7. On October 25, 2023, he was arraigned. *Id.*, Dkt. 13.

On October 3, 2025, Palin-Rosario pled guilty to illegal re-entry before the Hon. Ronnie Abrams, United States District Judge. *Id.*, Dkt. 46 ("Plea Tr.). Judge Abrams advised him of the immigration consequences of pleading guilty, including that it was "very likely that your removal from the United States will be mandatory." *Id.* at 12. He acknowledged discussing these immigration consequences with his attorney, and that he would be bound by his guilty plea regardless of these consequences. *Id.* at 13. In his plea allocution, Palin-Rosario admitted:

> Around July 17 of 2007, I came unlawfully into the United States previously being deported from the United States and after previously being convicted of an aggravated felony. I did not have permission of the United States government to reapply for admission.

*Id.* at 16–17.

On April 30, 2026, Palin-Rosario was sentenced. Pet. ¶ 19. In urging a sentence of time served, his counsel acknowledged that he would be deported after serving his sentence. *See* Apr. 30, 2026 Sentencing Tr. ("Sent'g. Tr.") at 9 ("at the end of this case, no matter what your Honor decides today, he will be put on a plane and sent back to [the Dominican Republic]"). Counsel stated:

> Mr. Palin-Rosario will be deported. There are federal agents in this courtroom ready to take him into ICE custody if he gets a sentence of time served. He will be deported, and that is punishment enough, your Honor.

*Id*. at 10. Counsel added:

> [A]nyone who is paying any attention to this case, and your Honor, I think it's doubtful that anyone is, but anyone who would see that when the government finds you in this country illegally, you will be arrested, prosecuted, convicted of a federal crime, and then *promptly removed*.

*Id*. at 14 (emphasis added). Palin-Rosario, for his part, acknowledged that his deportation was likely:

> I know that in the course of my decision I made, that I have made, I accept that. If ICE takes me and deports me, I will never come back without legal permission. And that is a promise.

*Id*. at 18.

Judge Abrams imposed a sentence of time served. *Id*. at 20–21. She stated that she was not imposing a follow-on term of supervised release, based on her expectation that Palin-Rosario would be deported. *Id*. at 21. Defense counsel acknowledged that the Government had notified him that, in the event of a time-served sentence, ICE intended to take Palin-Rosario into immigration custody, and thanked the Government for such notice, which had enabled the defense to supply the U.S. Marshals with a medical order and a list of medications he would need in custody. *Id*. at 23; *see also* 21 Cr. 751 (S.D.N.Y.), Dkt. 54 ("Medical Order").

5

### E.     April 30, 2026 Arrest by ICE

On April 20, 2026, after sentencing, Palin-Rosario, as anticipated, was arrested by ICE pursuant to a warrant of removal, or I-205. Dkt. 15-8. ICE transported him to 201 Varick Street in Manhattan for processing, and served him with a notice to reinstate his final order of removal (I-871) and an online detainee locator system pamphlet. *Id*. at 2; Paulino Decl. ¶ 19.

During processing, Palin-Rosario stated that he feared returning to the Dominican Republic and requested a reasonable fear interview. *Id*. ¶¶ 20, 22. ICE referred him to U.S. Citizenship and Immigration Services ("USCIS"), which conducts such interviews. *Id*. ¶ 23. Palin-Rosario was then transported to 26 Federal Plaza. *Id*. ¶ 21. On May 1, 2026, he was transferred to the Orange County Jail in Goshen, New York, where he remains detained today. *Id*. ¶ 22.

### F.     Instant Habeas Petition

On April 30, 2026, Palin-Rosario, *pro se*, filed the instant habeas petition, through his next friend Doris Angelica Rincon. Pet. at 1. It named as respondents Markwayne Mullin, Secretary of Homeland Security; Todd Lyons, acting director of ICE; and Todd Blanche, as "Field Office Director, New York ICE ERO," and "Attorney General." *Id*. On May 1, 2026, the Court ordered respondents to respond to the petition by May 8, 2026. Dkt. 3. On May 14, 2026, after receiving an extension, Dkt. 10, the Government responded, Dkts. 15–18.

### G.     Reasonable Fear Proceedings

On May 13, 2026, after reviewing Palin-Rosario's reasonable fear packet, USCIS determined that he had not established reasonable fear. Paulino Decl. ¶ 23. On May 13, 2026,

6

Palin-Rosario appealed that determination. *Id.* The IJ's review was scheduled for May 19, 2026. *Id.*

## II.    Applicable Legal Standards

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "This includes claims by non-citizens challenging the constitutionality of their detention." *Cabral v. Decker*, 331 F. Supp. 3d 255, 258 (S.D.N.Y. 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *see Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020); *Qasemi v. Francis*, No. 25 Civ. 10029, 2025 WL 3654098, at *3 (S.D.N.Y. Dec. 17, 2025).

## III.    Discussion

Palin-Rosario challenges the lawfulness of his detention on five grounds: that (1) he has "completed his criminal sentence"; (2) he has "serious medical needs"; (3) removal before adjudication of his "credible fear interview" would violate due process; (4) ICE should have used less restrictive alternatives than detention during removal proceedings; and (5) transfer from this District would interfere with this Court's jurisdiction. Pet. ¶¶ 41–49. Each claim is baseless.

### A.    Palin-Rosario's Mandatory Detention Under 8 U.S.C. § 1231 Defeats His First, Third, and Fourth Challenges

Palin-Rosario's first, third, and fourth challenges fail because his detention is authorized by 8 U.S.C. § 1231, which governs the detention of a noncitizen subject to a final removal order.

Under § 1231(a)(2), a person subject to a final removal order may be detained "[d]uring the removal period." 8 U.S.C. 1231(a)(2). Here, Palin-Rosario's removal order became final on July 8, 1999, nearly 27 years ago, upon the BIA's dismissal of his appeal. *See* Paulino Decl. ¶¶ 9–10; *Riley v. Bondi*, 606 U.S. 259, 267 (2025) (order of removal becomes administratively

7

final at the earlier of either "a determination by the [BIA] affirming such order," or "the expiration of the period in which the alien is permitted to" petition the BIA for review of the order). The removal period for a noncitizen begins on the latest of the following:

> (i)    The date the order of removal becomes administratively final.
>
> (ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

The third of these applies to Palin-Rosario, who was "released" from confinement upon the pronouncement of his time-served sentence. *See Rodriguez v. Shanahan*, 84 F. Supp. 3d 251, 259 (S.D.N.Y. 2015). ICE, in anticipation of that sentence and to carry out his removal, had secured a warrant of removal for Palin-Rosario. Dkt. 15-11. ICE's arrest of Palin-Rosario after his April 30, 2026 sentencing was thus lawful. And during the ensuing 90-day "removal" period, Palin-Rosario's detention is therefore mandatory. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021); *Turkmen v. Aschcroft*, 589 F.3d 542, 547 (2d Cir. 2009) ("The government is required to detain an alien ordered removed until removal is effected, at least for the removal period."); *Hoyte v. Holder*, No. 10 Civ. 3460, 2010 WL 6350756, at *5 (S.D.N.Y. Oct. 22, 2010) (same).

Contrary to Palin-Rosario's claim, Pet. ¶¶ 47–48, ICE, while carrying out a final removal order, is not required to pursue "less restrictive" alternatives to detention. *See Yusov v. Holder*, No. 13 Civ. 8521, 2014 WL 2743539, at *9 (S.D.N.Y. June 16, 2014) (due process clause does not require Government to "employ the least burdensome means" with respect to noncitizen detained under § 1231).

Nor, contrary to Palin-Rosario's claim, Pet. ¶¶ 45–46, does his request for a credible fear interview make his detention under § 1231 unlawful.[2] Only where a noncitizen subject to a final order of removal has filed a petition for review with the court of appeals and secured a stay from that court is detention under § 1231(a) displaced. *See J.L. v. Decker*, No. 22 Civ. 2853, 2024 WL 232115, at *1 (S.D.N.Y. Jan. 22, 2024) ("Unless and until the Second Circuit issues a stay of Petitioner's removal, his detention will remain authorized under Section 1231(a)."), *appeal dismissed sub nom.*, 2024 WL 3102857 (2d Cir. June 13, 2024); *Hechavarria v. Sessions*, 891 F.3d 49, 55–56 (2d Cir. 2018); *Narain v. Searls*, No. 19 Civ. 6361, 2020 WL 95425, at *3 (W.D.N.Y. Jan. 8, 2020). Palin-Rosario does not claim to have appealed his removal order to the Second Circuit, let alone receive a stay. In any event, Palin-Rosario's claim not to have received a credible fear interview has since been mooted. His reasonable fear paperwork was accepted by USCIS on May 5, 2026, Paulino Decl. ¶ 23; his interview by USCIS was held on May 13, 2026; and after it resulted in a negative determination, he appealed to an IJ. *Id.* Palin-Rosario has not been denied any process due him as to his reasonable fear claim.

Finally baseless is Palin-Rosario's claim, Pet. at 6–7, that he is entitled to release on supervision (or some other lesser confinement than detention). Palin-Rosario was not taken into custody after release on an order of supervision ("OSUP"), as is the case for some detainees who, unlike Palin-Rosario, are taken into custody by the ICE at the border and then released. Such persons are entitled to procedural safeguards (notice and an informal interview) upon revocation of the OSUP. *See Funes v. Francis*, 810 F. Supp. 3d 472, 488–93 (S.D.N.Y. 2025). In contrast,

---

[2] Palin-Rosario states he requested a "credible" fear interview. Pet. ¶¶ 26–27. As a noncitizen subject to a final removal order, Palin-Rosario is eligible for a "reasonable" fear determination. *Johnson*, 594 U.S. at 531;

9

Palin-Rosario illegally re-entered the United States in 2007 at an unknown time and place, Paulino Decl. ¶ 12, and was never apprehended and released by ICE on an OSUP.

In any event, were advance notice of his forthcoming detention required, Palin-Rosario received it. During his guilty plea proceedings, Palin-Rosario was notified by Judge Abrams and acknowledged that he would likely be removed from the United States after serving his sentence, Plea Tr. at 12–13, and at his sentencing, his counsel noted that upon a sentence of time served, he would be taken into ICE custody, and that the agents who would do so were present in the courtroom, Sent'g. Tr. at 10. Palin-Rosario's counsel even thanked the Government for providing notice of this, which enabled Palin-Rosario to furnish ICE with a medical order and a list of the medications he would need in custody. *Id*. at 23.

### B.      Palin-Rosario's Conditions of Confinement Challenge Fails

Palin-Rosario's challenge based on the asserted conditions of his confinement is far too sketchy to support relief.

An "[i]mmigration detainee[] can establish a due process violation for unconstitutional conditions of confinement by showing that a government official 'knew, or should have known' of a condition that 'posed an excessive risk to health,' and failed to take appropriate action." *Basank v. Decker*, 449 F. Supp. 3d 205, 214 (S.D.N.Y. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). But Palin-Rosario's petition, which he filed the day he was taken into ICE custody, does not plead any such conditions specific as to himself. He assails conditions at ICE detention facilities generally, but he does not identify any specific obstacle at the facility where he is held. Pet. ¶ 31. He notes that he has health conditions (hypertension, chronic pain, chronic liver disease, chronic kidney disease, and post-surgery prostate-cancer monitoring), *id*. ¶ 28, for the first two of which he requires prescriptions, *id*., and for all of which he requires specialized care, *id*. ¶ 29. But, beyond generally claiming that "ICE detention

10

facilities are not equipped to provide the level of care required" and thereby pose a risk to his health, *id.* ¶¶ 31, 33, he does not make any allegation particular to himself, let alone that a government official knew or should have known of an excessive risk to his health and failed to act. His pleadings, taken on their own terms, fail to plead a plausible challenge to his conditions of confinement. *See Johnson v. Rose M. Singer Ctr.*, No. 22 Civ. 2410, 2022 WL 1782171, at *3 (S.D.N.Y. May 31, 2022) (condition of confinement claim not stated where petitioner did not "describe the exact nature of the conditions at [the detention facility]" or "how these conditions specifically affected her health"); *Dawkins v. Copeland*, No. 17 Civ. 9926, 2019 WL 1437049, at *8 (S.D.N.Y. Mar. 31, 2019) (conclusory allegations, without more, insufficient to support conditions of confinement challenge).

In any event, the fuller record belies that claim. The transcript of the sentencing hearing reflects that ICE was furnished a medical order, issued by Judge Abrams, documenting Palin-Rosario's medical needs. *See* Medical Order. His counsel noted, specifically so that ICE would be aware, that his client had been "diagnosed with glaucoma, high cholesterol, high blood pressure, depression, sciatica, and he requires regular checkups for prostate cancer monitoring." Sent'g. Tr. at 24; *see also id.* at 23 (noting that Palin-Rosario planned to take into custody prescribed medications he had brought to sentencing). And the record reflects due attention to Palin-Rosario's medical and medication needs since the sentencing. On April 30, he was examined by nurse Yaideli Enriquez-Perez for medical clearance before he was transported to the Orange County Jail. Dkt. 17 ("Flynn Decl.") ¶ 4. She documented that Palin-Rosario possessed his prescription medications (Atorvastatin, Paroxetine HCL, Lisinopril, and Timolo); she noted his hypertension, chronic left hip and left leg pain, sciatica, history of panic attacks,

11

and prostate cancer; and she noted that he appeared "alert, pleasant, well nourished, well developed, in no acute distress, and well hydrated." *Id.*

Since entering ICE custody, Palin-Rosario has been observed by medical professionals at the Orange County Jail, where he is detained today, on four dates: May 1, 4, 5, and 7, 2026. *Id.* ¶¶ 5–7. On May 7, 2026, for example, Dr. Sara Gabere, a psychiatrist at the jail, administered psychiatric and behavioral evaluations to him. *Id.* ¶ 7. Dr. Gabere noted Palin-Rosario's prescription medication for anxiety and that "he has adjusted fairly well to the correctional environment, and that he will seek mental health support if needed." *Id.* The record does not reflect any failure by ICE to take appropriate action. It does not support—or come close to supporting—any reckless failure—by a person on notice that a condition "posed an excessive risk to the plaintiff's health or safety"—to act with reasonable care to mitigate the risk that [a medical] condition posed to [the detainee]. *See Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019) (cleaned up).

Accordingly, Palin-Rosario has not pled, let alone established, facts supporting that his conditions of confinement violated his constitutional rights. *See, e.g., Anderson v. Coughlin*, 757 F.2d 33, 34–35 (2d Cir. 1985); *Dawkins*, 2019 WL 1437049, at *8; *Grant v. Demarco*, No. 11 Civ.5460, 2011 WL 6097740, at *3–4 (E.D.N.Y. Dec. 6, 2011); *cf. Basank*, 449 F. Supp. 3d. at 214–25 (granting immigration habeas petition challenging conditions of confinement during COVID-19 pandemic).

### C.    Palin-Rosario's Fifth Challenge is Baseless

Palin-Rosario's final challenge to his detention is that his "transfer" would interfere with this Court's jurisdiction. Pet. ¶ 49. With this claim, Palin-Rosario appears to address the possibility of his removal from this District during this litigation. But this Court has not stayed Palin-Rosario's transfer to another District. Nor has Palin-Rosario sought, or obtained, a stay to

this effect from the Second Circuit. *See, e.g.*, *Hechavarria*, 891 F.3d at 55–56; *Narain*, 2020 WL 95425, at *3. And there is no freestanding legal barrier to the Court's resolving his petition while he is held in another District. *See, e.g.*, *Khalil v. Joyce*, 771 F. Supp. 3d 268, 279 (S.D.N.Y. 2025) ("a petitioner's relocation after a 'properly file[d]' habeas petition does not deprive a district court of jurisdiction" (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 440 (2004)); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 406 (S.D.N.Y. 2025) (petitioner's transfer from this District to the Eastern District of New York did not interfere with court's jurisdiction over immigration habeas petition); *Campbell v. Almodovar*, No. 25 Civ. 9509, 2025 WL 3538351, at *5 (S.D.N.Y. Dec. 10, 2025) (same).

In any event, with the dismissal of this action as baseless, as ordered below, this Court has no charter to block—and this action cannot lawfully pose any barrier to—ICE's transfer of Palin-Rosario out of this District.

## CONCLUSION

For the foregoing reasons, finding all claims baseless, the Court dismisses Palin-Rosario's petition for a writ of habeas corpus. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*Paul A. Engelmayer*

———————————————————
PAUL A. ENGELMAYER
United States District Judge

Dated:  May 20, 2026
        New York, New York

13